[Crim. No. 1346.  Second Appellate District, Division Two.—July 21, 1926.]

In the Matter of the Application of W. WASHER for a Writ of Habeas Corpus.*

[1] USURY — LOANS SECURED BY TRUST DEED—CORPORATIONS—EXCEPTIONS IN SECTION 3 OF ACT OF 1919—STATUTORY CONSTRUCTION.— The exception embodied in the latter portion of the Usury Act (Stats. 1919, p. lxxxiii), which provides, in substance, that any person who shall ask more than twelve per cent per annum upon money actually loaned for the use thereof, when repayment shall be secured by a mortgage, trust deed, bill of sale, assignment, pledge, receipt, or other evidence of debt, except corporation bonds, and municipal and other public bonds, upon property, real or personal, shall be guilty of a misdemeanor, etc., does not create an exception in cases of individual loans secured by deposits of corporation, municipal, or other public bonds, but rather in cases of loans to corporations issuing bonds which are not in need of the protection of the statute.

[2] ID.—LOANS TO CORPORATIONS—CONSTITUTIONAL LAW.—The Usury Act (Stats. 1919, p. lxxxiii), which prohibits the exaction of

---

2. Validity of usury statute that discriminates between corporations and natural persons, notes, 27 L R. A. (N. S.) 899. See, also, 27 R. C. L. 204.

*An application to the supreme court for a writ of *habeas corpus* involving the same subject was denied March 4, 1927 (*In re Washer*, 200 Cal. ——).

more than twelve per cent per annum for the use of money, but creating an exception in the case of loans to corporations issuing bonds and not situated as a necessitous borrower, does not discriminate against makers of individual loans in violation of sections 11 and 21 of article I of the constitution of California and the fourteenth amendment to the constitution of the United States.

[3] Id.—Laws Against Unreasonable Rates of Interest—Favorable Construction.—Laws enacted to guard against unreasonable rates of interest are laws against oppression and should be favorably regarded.

[4] Id.—Police Power—Legislature.—Usury laws are within the police power of the state, and it primarily rests with the legislature to determine what police regulations are essential to the public welfare.

[5] Constitutional Law — Statutes — Presumptions.—The constitutionality of acts of the legislature is presumed.

[6] Id.—Statutory Construction—Inconsistent Provisions.—Where a statute is susceptible to two constructions, one consistent and the other inconsistent with the provisions of the constitution, it should be so construed as to make it harmonious with the constitution and comport with the legitimate powers of the legislature.

[7] Id.—Usury Act of 1919—Exaction of Appraisal and Other Fees in Excess of Amount Allowed by Statute — Statutory Construction.—The purpose of that part of section 3 of the Usury Act (Stats. 1919, p. lxxxiii) which provides that any person who shall ask more than an amount equal to five per cent on money actually loaned and secured in all sums of one thousand dollars or less, and three per cent on all sums over one thousand dollars in full for all examinations, views, fees, appraisals, commissions, or renewals made within one year from date of loan and charges of any kind or description whatsoever in the procuring, making, and transacting of the business connected with such loans shall be guilty of a misdemeanor, etc., was to make an exaction of more than five per cent on one-thousand dollars and of three per cent above one thousand dollars for examinations, views, fees, appraisals, and other charges, bad irrespective of the interest charged, and does not result in an unlawful discrimination violative of sections 11 and 21 of article I of the constitution of California and the fourteenth amendment to the constitution of the United States.

---

4. Constitutionality of usury statutes, notes, 27 **L. R. A. (N. S.)** 899.

6. See 5 **Cal. Jur.** 615; 6 **R. C. L.** 78.

[8] ID.—VALID AND INVALID PORTIONS OF STATUTE—RIGHT TO RAISE
CONSTITUTIONAL QUESTION.—A person whose rights are affected
by one portion of a statute may not question the constitutionality
of another portion, where the operation of the portion affecting
him will not be influenced by the validity or invalidity of the
contested portion.

[9] CRIMINAL LAW—VIOLATION OF SECTION 3, USURY ACT OF 1919—
VALID AND INVALID PORTIONS OF STATUTE—CONSTITUTIONAL LAW.
One convicted of demanding and receiving excessive interest in
violation of one part of section 3 of the Usury Act (Stats. 1919,
p. lxxxiii) is not entitled to question the constitutionality of
another portion of the same section relating to the acceptance
of any fee or commission for procuring a loan for a shorter
period, than six months, a crime totally different from that
committed by him.

---

(1) 39 Cyc., p. 913, n. 35.   (2) 12 C. J., p. 1172, n. 39; 39 Cyc.,
p. 910, n. 12 New.   (3) 39 Cyc., p. 910, n. 14 New.   (4) 12 C. J.,
p. 890, n. 68; 33 C. J., p. 217, n. 87; 39 Cyc., p. 910, n. 10.   (5) 12
C. J., p. 787, n. 88, p. 790, n. 10, p. 791, n. 19, p. 798, n. 46.
(6) 12 C. J., p. 788, n. 1.   (7) 39 Cyc., p. 910, n. 12 New.   (8) 12
C. J., p. 764, n. 71.   (9) 12 C. J., p. 764, n. 71.

PROCEEDING on Habeas Corpus to secure release
from custody after conviction of violation of Usury Act.
Writ discharged; petitioner remanded.

The facts are stated in the opinion of the court.

Charles Greenberg, Laurence W. Beilenson, Schweitzer
& Hutton and Henry Haves for Petitioner.

J. M. Friedlander, City Prosecutor, and A. T. Folsom,
Deputy City Prosecutor, for Respondent.

J. M. Jefferson, Davis & Thorne, W. A. Alderson and
George L. Sanders, *Amici Curiae.*

WORKS, J.—An application for the writ of *habeas corpus.*
At the time of the filing of the petition in this proceeding petitioner was under imprisonment pursuant to conviction upon a charge of having violated the provisions of
a statute of the state known as the Usury Act. The com-

---

8.   See 5 Cal. Jur. 615; 6 R. C. L. 89.

plaint under which he was convicted alleges that he "did wilfully and unlawfully ask, demand, receive, take, accept and charge of and from" certain individuals more than 12 per centum per annum for the sum of $7,000 loaned to the individuals, "for the forbearance, use and loan of said sum of money; payment of said sum of money being secured by an evidence of debt, to-wit: a trust deed upon real property," describing it, "and by a promissory note executed" by the individuals in favor of petitioner, and bearing a certain date. Upon the filing of petition therefor the writ issued, petitioner was released on bail, and we are now to determine whether his punishment is lawful.

Petitioner contends for his release from durance on the ground that the Usury Act is unconstitutional. The statute which was enacted by the people under the initiative provisions of the constitution, is to be found in Stats. 1919, page lxxxiii. It also appears in Deering, General Laws, as Act No. 3757. For convenience in discussing the various constitutional questions argued in the briefs, the entire enactment, with the exception of a few lines which clearly are not involved in the points presented, is below set forth. For further convenience in dealing with the questions presented to us the quotation from the statute is divided into two parts. The first of these reads:

"Sec. 1. The rate of interest upon the loan or forbearance of any money, goods or things in action or on accounts after demand or judgments rendered in any court of this state, shall be seven dollars upon the one hundred dollars for one year and at that rate for a greater or less sum or for a longer or a shorter time; but it shall be competent for parties to contract for the payment and receipt of a rate of interest not exceeding twelve dollars on the one hundred dollars for one year and not exceeding that rate for a greater or less sum or for a longer or shorter time, in which case such rate exceeding seven dollars on one hundred dollars shall be clearly expressed in writing.

"Sec. 2. No person, company, association or corporation shall directly or indirectly take or receive in money, goods or things in action, or in any other manner whatsoever, any greater sum or any greater value for the loan or forbearance of money, goods or things in action than at the

rate of twelve dollars upon one hundred dollars for one year; and in the computation of interest upon any bond, note, or other instrument or agreement, interest shall not be compounded, nor shall the interest thereon be construed to bear interest unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith. Any agreement or contract of any nature in conflict with the provisions of this section shall be null and void as to any agreement or stipulation therein contained to pay interest and no action at law to recover interest in any sum shall be maintained and the debt cannot be declared due until the full period of time it was contracted for has elapsed.

"Sec. 3. Every person, company, association or corporation, who for any loan or forbearance of money, goods or things in action shall have paid or delivered any greater sum or value than is allowed to be received under the preceding sections, one and two, may either in person or his or its personal representative, recover in an action at law against the person, company, association or corporation who shall have taken or received the same, or his or its personal representative, treble the amount of the money so paid or value delivered in violation of said sections, providing such action shall be brought within one year after such payment or delivery."

The second portion of the statute follows immediately the first part as above set forth and will be referred to hereafter in this opinion as the latter part of section 3. It reads:

"And any person, company, association or corporation, who shall ask, demand, receive, take, accept or charge more than twelve per centum per annum upon the sum of money actually loaned for the forbearance, use or loan thereof, when the repayment of the money loaned shall be secured by a mortgage, trust deed, bill of sale, assignment, pledge, receipt or other evidence of debt, except corporation bonds, and municipal and other public bonds, upon property, real or personal, or by assignment of wages, or ask, demand, receive, take, accept or charge more than an amount equal to five per cent so actually loaned and secured in all sums of one thousand dollars or less, and three per cent on all sums over one thousand dollars in full for all examina-

tions, views, fees, appraisals, commissions, renewals made within one year from date of loan and charges of any kind or description whatsoever, except abstracts or certificates of title charges made under the Torrens land law or otherwise, in the procuring, making and transacting of the business connected with such loans, or who shall ask, demand, receive, take, accept or charge any fee, bonus or commission whatsoever for the use or loan or the procuring of such loan of any sum of money for a shorter period than six months when said loan is not secured by a mortgage or pledge upon real estate, or shall violate the provisions of sections one and two of this act, shall be guilty of a misdemeanor and upon conviction thereof shall be punished for the first offense by a fine of not less than twenty-five dollars nor more than three hundred dollars, or by imprisonment not more than six months, or by both such fine and imprisonment, and for each subsequent offense and conviction shall be punished by a fine not less than one hundred dollars nor more than five hundred dollars and by imprisonment not less than six months nor more than one year.''

The points urged by petitioner for his release from custody depend for their solution almost wholly, if not altogether, upon the language of the latter part of section 3, and in presenting them petitioner relies upon the following guaranties contained in the organic law of state and nation, respectively:

''All laws of a general nature shall have a uniform operation'' (Const. Cal., art. I, sec. 11).

''No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the legislature, nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens'' (Const. Cal., art. I, sec. 21).

No state shall ''deny to any person within its jurisdiction the equal protection of the laws'' (Const. U. S., 14th Amdt.).

These various constitutional provisions, generally speaking and having in mind the situation exhibited in the present controversy, look to the accomplishment of one object, the protection of the individual against unjust discrimina-

tion in the enactment of laws, and in relying upon them
petitioner contends that this object would be frustrated if
the Usury Act were permitted to stand, or if, under cer-
tain conditions, certain portions of it were permitted to
stand.   The first point made by petitioner is that he is dis-
criminated against by the language of the latter part of
section 3 making a certain exception in the case of loans
with which ''corporation bonds, and municipal and other
public bonds'' are connected, and we state thus generally,
for the present, the nature of the exception, for the par-
ties are not in accord as to its import.   The meaning of
the exception must therefore be ascertained before a con-
clusion may be reached upon the claim of discrimination
suggested by petitioner.   The point in which the parties
are in disagreement as to its meaning may be shown by
the propounding of two questions, in the alternative: 1.
Does the exception contemplate loans to corporations, to
take one kind of entity to which it is made to apply, which
loans are made, through ''sale'' in the open market, by
investors in corporate bonds and upon the security afforded
by them? or, 2. Does it relate to loans made to private
individuals, who may be hard pressed and needy borrow-
ers, and upon the security of corporate bonds of which
they may be possessed and which they pledge as collateral
security for such loans?   Whether the first or the second
of these questions is to be answered in the affirmative is
an important matter.   The exact point made by petitioner,
under his claim of an unjust discrimination against him
and against those situated like him, is that because of the
alleged discrimination either the Usury Act is unconsti-
tutional in its entirety, or, if a certain construction which
it is not now necessary to specify may be placed upon
sections 1 and 2, then section 3 alone is unconstitutional.
Otherwise stated, his point is that the entire act may be
obnoxious to the organic law, but that section 3, at least,
is surely so.   Under well-established principles of consti-
tutional law, however, all doubt as to the validity of the
Usury Act, or of any of its parts, upon the ground now
taken, is dispelled if it may be discovered that the excep-
tion now under the glass is based upon a classification
which the legislature, proceeding with due regard to con-
stitutional mandate or inhibition, had authority to make—

if it can be said that those coming within the exception belong to a properly ascertained and declared class to which petitioner and those circumstanced like him do not belong. Upon these suggestions the importance of the two questions above propounded at once becomes manifest. If the exception relates to loans made to corporations, or to the other entities contemplated by it, through a sale of bonds upon the open market, we shall have no difficulty in reaching the conclusion that the exception is based upon a constitutional scheme of classification. If the exception deals with loans made to individuals—to possibly necessitous borrowers—upon a deposit of their corporate bonds as collateral security, the discovery of a proper scheme of classification may not be so easy. Obviously, we can say no more at present upon the question of classification, proper or improper. The first question for solution is, What is the import of the exception which we have extracted, in such general terms, from the latter part of section 3?

[1] It now becomes necessary to state the terms of the exception with exactness. This may be done by a quotation from the statute, omitting alternating words and all expressions which are immaterial to a construction of the clause in which the exception is contained, and which may tend to make construction difficult. Thus shortened the clause reads: "And any person who shall ask more than twelve per centum upon the money actually loaned for the use thereof, when repayment shall be secured by a mortgage, trust deed, bill of sale, assignment, pledge, receipt or other evidence of debt, except corporation bonds, and municipal and other public bonds, upon property, real or personal, shall be guilty," etc. A mere reading of this language demonstrates that its meaning is far from clear. The clause "or other evidence of debt" would seem to furnish the principal guide to a construction of the entire passage, but the import of that guiding expression is determinable only after a consideration of the language which accompanies it. The meaning of the words "or other evidence of debt" is obscured by the fact that they are preceded by the language "when repayment shall be secured by a mortgage, trust deed, bill of sale, assignment, pledge, [or] receipt." Not only under the language of

the statute are these instruments said to be those by which repayment shall be *secured,* but under the law it is quite possible that not one of them is, in strictness, to be considered as an "evidence of debt." That part of the clause which refers to loans the repayment of which is secured by a "pledge" does not necessarily contemplate an evidence of debt as security. While promissory notes and other indubitable evidences of debt may be the subject of pledge, so also may ordinary articles of personal property (Civ. Code, sec. 2986; 21 Cal. Jur., p. 311, sec. 21)—articles which in the highest flight of the imagination could not be designated as evidences of debt. A mere receipt is plainly not an evidence of debt (*England* v. *Hughes,* 141 Ark. 235 [217 S. W. 13]). Of course, as recognized by the case cited, a "receipt" may be so drawn as to contain a promise to pay, but it then becomes both a receipt and a promissory note or an I. O. U. The paper is then an evidence of debt, but it is so in its promise to pay and not in its character as a receipt. It is obvious that neither a bill of sale nor an assignment, strictly so called, is an evidence of debt. It has been determined that under certain circumstances a mortgage is an evidence of debt, once in a case in which the instrument involved was the old conveyance of mortgage with defeasance clause (*Chase* v. *Ewing,* 51 Barb. (N. Y.) 597), and once in a case in which a modern mortgage securing the payment of a promissory note was in question (*Kaiser* v. *Idleman,* 57 Or. 224 [28 L. R. A. (N. S.) 169, 108 Pac. 193]), the latter decision citing the first as authority; but there is a well-considered declaration to the contrary, and that too in an instance of the modern form of mortgage with promissory note (*Littlefield* v. *Clary,* 66 Ga. 322). In the latter case the court said: "A mortgage 'is a security for debt,' according to our Code, and not, strictly speaking, a mere evidence of indebtedness." On the whole it is not to be doubted whether the word "mortgage," as employed by the people in the clause of the Usury Act now under scrutiny, can be considered as referring to an evidence of indebtedness, even though, along with the other terms with which it is in company, it is so characterized. We have not yet mentioned "trust deeds," another of the terms included in the clause. It is extremely doubtful whether

such an instrument is an evidence of indebtedness. Certainly, if a mortgage is not, there is the more reason for determining that a trust deed is not.

It is not necessary for us here to decide whether each and every one of the words which immediately precede the expression "evidences of debt" are truly descriptive of and were intended to designate actual evidences of debt. It is enough to say that some of them plainly cannot belong to that classification, for such a conclusion answers the purpose of our discussion. It is now manifest that the expression which, after the word "except," follows the phrase, "evidence of debt," that is to say, the expression "corporation bonds, and municipal and other public bonds," need not be construed as referring to evidences of debt, as that expression is understood in the strict nomenclature of the law. To put it differently, as the expression "*other* evidence of debt" follows words which do not refer to strict evidences of debt, the words which follow that expression, "corporation bonds and municipal and other public bonds," are not necessarily to be construed as referring to strict evidences of debt. To state the situation differently, again: If we attempt to follow the rule *ejusdem generis,* and under that rule essay to consider "corporation bonds and municipal and other public bonds" in such a manner as to place them in the same genus with the terms which precede the word "except," we need not consider such bonds as strict evidences of debt for the very good reason that most of the instruments named just before the term "except" are not themselves evidences of debt, although they are inferentially so named by the three words which immediately follow the term "except." The names of the instruments or securities which precede that word in strictness do not establish such a genus. Therefore, the words which follow it need not belong to that genus. We should make it plain here that in what we say we have in mind a rule of construction, based upon an admeasurement of context, and do not deal with the matter of the usual and ordinary import of the terms "corporation bonds," "municipal bonds," or "public bonds." That ordinary meaning is, of course, well understood. Such bonds, beyond a doubt, are in strictness evidences of debt. We only say that if there is room to con-

sider them in any other light, as they are referred to in the Usury Act, the rule *ejusdem generis* does not prevent.

It will be observed that a discussion of the clause of the Usury Act now under consideration, especially in connection with the argument thus advanced, involves us in a maze of words. If we have made ourselves clear, notwithstanding this great difficulty, we may now say that up to the point at which we have arrived—and we pause to remark that we must yet go further—the result of our discussion supports the argument of petitioner as to the import of the exception embodied in the Usury Act and now under consideration, and in saying this we have in mind a certain specific point made by petitioner within the general proposition already stated and which is embraced in the two questions which we have above propounded as to the meaning of the exception. This specific point must now be stated. Petitioner contends that the words which precede the term ''except'' in the statute do not designate evidences of debt, but that they, under the terms of the clause in which the exception is contained and under the law, are descriptive of various kinds of *security* for the payment of debt. Upon this premise he then asserts that the expression, ''corporation bonds, and municipal and other public bonds,'' which follows the word ''except,'' must be construed in such manner as to make them refer to security for the payment of debt, also. The next step in his argument is that the expression can be so construed if it is held to relate to the repayment of loans to individuals who may privately own such bonds and who may deposit them as collateral with the persons who may make such loans to them and as security for repayment. As an accompaniment to this assertion petitioner says that corporate, municipal, and other public bonds, being evidences of debt of the entities which issue them, cannot be considered as security for the repayment of the debts of those entities, incurred on the faith of advances made to them by investors in bonds, and that trust deeds issued by such entities in connection with bond issues are the security for repayment in such instances and not the bonds themselves. It will now be perceived how the argument of petitioner is supported, as far as we have proceeded, by the conclusion which we have above ex-

pressed as to the rule *ejusdem generis*. But, as we have observed, we must go further.

We have already concluded that the rule *ejusdem generis* does not *compel* us to consider the expression "corporation bonds and municipal and other public bonds" as intended by the people, in the enactment of the Usury Act, to refer to those instruments as evidences of debt. These questions are now to be determined: Are we bound to consider the expression as referring, strictly, to security for the payment of debt? Are we bound to adopt completely the contention of petitioner? To put the problem conversely: May we give to the expression the meaning which it ordinarily imports and hold that the exception in the statute refers to loans made to corporations, municipalities, and other public entities upon the faith of bonds issued by them? We shall discuss the problem before us—and it is to be conceded that it is an extremely difficult one—in the terms of the question last put, for we shall be able to answer it in the affirmative.

In the first place, as we have so often remarked, the bonds referred to in the exception are actually evidences of debt. They are, in effect, the promissory notes of the entities which issue them. Not only so, but they are called evidences of debt by the presence of that very expression immediately preceding the word "except" in the statute, although the expression is largely if not altogether a misnomer as applied to the names of instruments which precede the word "except." These considerations are far from controlling, but they are worthy of mention in assembling the arguments in opposition to the contention of petitioner. There are other considerations which are vastly more potent against him. It will be noted, for instance, that the statute undoubtedly intends, in that part of it immediately preceding the word "except," to refer to loans the repayment of which are to be "secured" by instruments executed by the borrower. To be more specific, it is evidently intended by the statute that the denouncement of a charge of more than twelve per centum interest on loans the repayment of which is secured by "a mortgage, trust deed, bill of sale, assignment, . . . [or] receipt" contemplates loans in connection with which the instruments mentioned, or any of them, are executed by

the borrower as security. This patent fact argues that the people intended that the exception in favor of loans "secured" by corporation bonds, and municipal and other public bonds" should apply to loans made to those entities which execute the bonds, although technically such bonds do not "secure" payment, but are evidences of the debt. We find here a genus established by the terms preceding the word "except," omitting the word "pledge," to which genus corporate, municipal, and other public bonds may be made to belong only upon the considerations just mentioned. We must now turn to the word "pledge," as affecting the import of the clause immediately following the word "except." By the use of the word "pledge" the people plainly intended, if we forget for the moment the expression which follows the word "except," that the inhibition against an excessive rate of interest was to apply to all loans to secure the repayment of which personal property might be deposited in pledge, whether such personal property consisted of promissory notes, corporate bonds, municipal bonds, other public bonds, or of specific articles of personal property, as that term is ordinarily understood, such as watches, jewelry, musical instruments, and the like. It will thus appear that by the use of the word "pledge" the people made the inhibition of the statute apply to that very character of loan to which petitioner would now apply the exception of the statute. We can see no reason for so construing the exception. The inhibition of the statute plainly applies to loans the payment of which is secured by a deposit with the lender of promissory notes, certificates of deposit, warehouse receipts, and certificates of shares of corporate stock. Why should an exception be made in the case of loans secured by a deposit of "corporation bonds or municipal or other public bonds"? We repeat that there is no apparent reason for such an exception. It would appear to us as witless, being a departure, without sensible warrant, from the evident purpose of the entire enactment in which the exception is contained. Under a line of authority which we shall cite below, and which announces what is practically a self-evident proposition, usury laws are enacted for the protection of borrowers. Such laws are intended as a bulwark to protect the needy from the greed of the

rapacious. It is the theory of such enactments that those in distress might be plunged into deeper distress if the law did not come to their relief and protect them from the money lender, who would prey upon misfortune and wring from the needy borrower, in his endeavor to tide over present difficulty, the utmost farthing as compensation for what is often an evanescent benefit—merely the putting off of an evil day. If we turn again to our statute, what reason can there be for an attempt to lift borrowers who deposit "corporation bonds and municipal and other public bonds" as a "pledge" for the payment of their debts from the necessitous class in which the people have placed borrowers who pledge promissory notes and certificates of corporate stock as security? It is obvious that there is none. When we come to consider, which we shall do immediately, the claim of petitioner that he is discriminated against by the exception in the statute we shall endeavor to show that corporations, municipalities, etc., which borrow money upon bond issues do not belong to the necessitous class we have mentioned and are, therefore, a proper subject of classification, as we think the statute intended to classify them, under the constitution.

[2] As a basis for further argument in refutation of the contention of petitioner as to the import of the exception embodied in the statute, we turn now to a consideration of his claim that the exception puts him under the ban of an unjust and, therefore, unconstitutional discrimination. Undoubtedly this contention were well-founded if the exception were conceded to mean what petitioner insists that it means. We have already seen that if the exception were so construed it would operate upon those who are situated similarly with petitioner. Upon such a construction, then, it would result that the classification attempted to be made by the exception would not be based upon a natural or just scheme of classification, and that the statute, or some parts of it, at least, would be unconstitutional and therefore void. A directly opposite result flows from the view that the exception in the statute was intended to apply to loans to those corporate entities which borrow money upon bond issues. They are, from the very nature of the transactions incident to the issue and sale of their bonds, in a class entirely different from that occu-

pied by the necessitous borrower. They are not brought in contact with the individual money lender, they are not subject to the pressure exerted by him upon the victims whom it is the purpose of the law to protect, they cannot fall under his wiles. Such entities are under the pressure only, in the ascertainment of the rate of interest they are to pay, of the demands of the money market. There is no necessity for a further development of this theme. It is too obvious for argument that the exception in the statute, when applied to such borrowers, is based upon a scheme of classification that is wholly just and equitable. It is obvious also, therefore, that upon such a construction of the clause which voices the exception, petitioner's claim of an unjust discrimination against him falls to the ground and carries with it his contention that any part of the statute is unconstitutional because of such discrimination. These considerations afford reason, in addition to that which we have already shown, for a determination that the people intended the exception in the statute to apply to corporate entities which borrow money upon bond issues. [3] "Laws enacted to guard against unreasonable rates of interest are laws against oppression, and should be favorably regarded, as they have always been favored by the common law of England" (*Eaker* v. *Bryant*, 24 Cal. App. 87 [140 Pac. 310]). [4] Usury laws are within the police power of the state (33 C. J., 217). It primarily rests with the legislature to determine what police regulations are essential to the public welfare (*Ex parte Hadacheck*, 165 Cal. 416 [L. R. A. 1916B, 1248, 132 Pac. 584]). [5] The constitutionality of acts of the legislature is presumed (*In re Brady*, 65 Cal. App. 345 [224 Pac. 252]). In passing upon the constitutionality of a legislative enactment, "the whole scope and design of the statute is to be studied, and its language is to be so construed as to aid that design, and not to defeat it" (*French* v. *Teschemaker*, 24 Cal. 518). "It is with extreme reluctance that courts feel constrained to hold any law unconstitutional, and only do so when no other alternative presents itself whereby it can be avoided" (*Bell* v. *Superior Court*, 150 Cal. 31 [87 Pac. 1031]). "The delicate act of declaring an act of the legislature unconstitutional and void should never be exercised unless there is a clear repugnancy between the

statute and the organic law. In a doubtful case the benefit of the doubt is to be given to the legislature" (*Heney* v. *Jordan*, 179 Cal. 24 [175 Pac. 402]). [6] "It is a well-recognized canon of interpretation that, where a legislative enactment is susceptible of two constructions, one consistent and the other inconsistent with the provisions of the constitution, such enactment should be so construed as to make it harmonious with the constitution and comport with the legitimate powers of the legislature" (5 Cal. Jur. 615). These rules of law, enunciated concerning instances in which acts of the legislature were in question, apply with unabated force when an attempt is made to construe an enactment issuing from the people under the initiative provisions of the constitution. We conclude, on the whole, that the exception embodied in the statute now under examination was intended to refer, not to loans made upon "corporate bonds and municipal and other public bonds" pledged as security, but to loans made to the corporate entities which issue such bonds and through the sale thereof on the market. Therefore we conclude, also, that petitioner's contention that he is unjustly discriminated against by the exception is without foundation.

[7] The next point made by petitioner relates also to the latter part of section 3 of the Usury Law. Following the scheme adopted in discussing the question of which we have just made disposition, we shall quote from the section those parts which are involved in the point now to be examined, omitting unnecessary words and passages which might serve to impede construction. Thus shortened the latter part of the section reads: "Any person who shall ask more than an amount equal to five per cent [on money] so actually loaned and secured in all sums of one thousand dollars or less, and three per cent on all sums over one thousand dollars in full for all examinations, views, fees, appraisals, commissions or renewals made within one year from date of loan and charges of any kind or description whatsoever in the procuring, making and transacting of the business connected with such loans shall be guilty," etc. The expression, "so actually loaned and secured," as it shows in this excerpt, evidently connects with the clause "the sum of money actually loaned" as that clause appears in the latter

part of section 3 as shown by the copy of the statute inserted near the beginning of this opinion, although, to render intelligible the excerpt from the statute now particularly under scrutiny, the words "on money" must be read before the words "so actually loaned and secured." We have accordingly inserted those words in brackets at the proper place in the excerpt now under examination.

The expression "so loaned and secured," in the excerpt now before us, would also seem to connect with the clause above it in the latter part of section 3, which reads, "when the repayment of the money loaned shall be secured by a mortgage," etc., and which clause has been the subject of such extended discussion above.

Petitioner contends that the portion of the statute which is now to be examined unjustly discriminates against him, but, as in the case of the point which we have above determined, a preliminary inquiry into the meaning of the statute must be made before we may embark upon a discussion of the specific question which is raised. In his construction of the feature of the enactment which is now of interest petitioner imposes a heavy burden on the tie that binds the expressions "the sum of money actually loaned," "when the repayment of the money loaned," and "so loaned and secured." From the relation between these clauses petitioner deduces a variety of consequences to flow from the operation of the Usury Act. He says that only two purposes could have been intended by the statute in those parts of it which are fastened together by the three clauses which we have quoted. Under the first of these purposes, as seen by him, he asserts, because of the presence of the prohibition against more than 12 per cent interest on loans in that part of section 3 which we have quoted in discussing the point already determined, and through the connection caused by the interdependence of the three clauses mentioned—he asserts, we repeat—that the portion of the statute now under scrutiny allows an adding together of charges against a borrower, thus, to quote from his brief: "A lender may exact 17 per cent on loans of $1000 or less, but only 16 per cent [15 per cent (?)] on loans of $2000." Under the first purpose seen by petitioner, also, because of the presence of the provision, "shall be secured by mortgage," etc., in the statute, and because of the connection between the three

clauses above mentioned, he forecasts this consequence: "A lender may exact only 17 per cent on a loan of $1,000 which is unsecured, or which is secured by a mortgage, a trust deed, a corporation note, an individual bond, or other security. But if the loan is secured by bonds of the X Corporation, or by bonds of Oshkosh, Wisconsin, he may make any charge he wishes for appraisals, etc., and, therefore, may exact an unlimited amount." We can see nothing in the phraseology of the statute which entails either of these extreme consequences. Certainly, the enactment should be construed, if possible, in such fashion as to avoid them both. The possibility of such a construction, nay, a necessity for it, is to our minds presented by the fact that the provision as to 12 per cent interest and the one naming the various kinds of "securities," misnamed "evidences of debt," is separated from the provisions as to 5 and 3 per cent for "appraisals," etc., by the conjunction "or." In stating the "first purpose" of the latter provision, as he sees it, petitioner reads the section as if the conjunction "and" were there employed.

Petitioner's conjectured "second purpose" of this part of the statute is in our view the real one which the people had in mind in enacting the measure. Petitioner thus states the "second purpose" which he sees: "The other purpose that may have been intended to be accomplished is to make an exaction of more than 5 per cent on $1000 and of 3 per cent above $1000 for examinations, views, fees, appraisals and other charges, bad irrespective of the interest charged." In discussing the constitutional question presented by petitioner we shall assume, for we now decide, that this latter quotation from his brief states the real and only "purpose" of the portion of the statute now under examination. The "first purpose" which petitioner sees in that part of the enactment is a mere figment of the imagination.

Is petitioner unconstitutionally discriminated against by the provision which we have just interpreted? We cannot see how such a result is possible. It must be remembered here that the claim of unjust discrimination now made is not presented and cannot be presented upon the theory which was behind the point of which we have already disposed. There petitioner advanced the arguable contention that an

exception in the statute—that concerning loans on "corporate bonds and municipal and other public bonds"—so operated as to allow an escape from punishment under the Usury Act of those who naturally were in the same class with himself. He was convicted under that portion of the statute which denounces a charge of more than 12 per cent interest per annum on a loan of money. The feature of the law which he now assails defines a different crime. It singles out for punishment those who may charge 5 per cent on loans of $1,000, or less, or 3 per cent on loans of more than $1,000, for "appraisals," etc. Petitioner urges that this latter denouncement of a separate crime is unconstitutional on various grounds, none of which, we think, is open to him. He insists, for instance, that the classification in this branch of the statute as between loans of $1,000 or less and loans of more than $1,000—as much as a 5 per cent charge for "appraisals" being allowable under the first class and not more than 3 per cent under the second—is not based upon a sound or natural scheme of classification. If the validity of this contention be admitted for the sake of argument—although we are far from so deciding—petitioner has not been injured by the unjust discrimination which he asserts—that is, in truth, there is no discrimination against him. Such a point may be presented only as between those who may charge 5 per cent and those who may charge no more than 3 per cent for "appraisals." **[8]** It is a well-settled rule of constitutional law that "a person whose rights are affected by one portion of a statute may not question the constitutionality of another portion, where the operation of the portion affecting him will not be influenced by the validity or invalidity of the contested provision" (12 C. J. 764). We can see no reason why the portion of the Usury Act which affects petitioner—that part denouncing a charge of more than 12 per cent interest—can be influenced in its operation by a determination that the part of the law limiting the charge for "appraisals" is unconstitutional. It seems to us that the two provisions are severable and that, therefore, the inhibition against an excessive rate of interest may stand even if the denouncement of an excessive appraisal charge must fall. This conclusion appears to be justified by all the authorities (5 Cal. Jur., p. 643, sec. 69).

It must be confessed, however, that petitioner makes a semblance of a claim of discrimination against him by the branch of the statute which denounces excessive charges for "appraisals." He cites several "examples" of the manner in which the statute will operate under the latter provision. One of these examples is thus stated in his brief: "L lends B $2000 secured by a mortgage on real estate and charges 1 per cent interest plus an appraisal charge of 5 per cent. L has committed usury. M lends B $2000, secured the same way, and charges B 12 per cent interest and no appraisal charge. M has not committed usury. Yet M has charged B more than L." Petitioner contends that this statement is enough to show that "the law" is unconstitutional. We think it is not. It merely illustrates the assertion we have already made to the effect that the inhibition against a charge of more than 12 per cent interest and the denouncement of an excessive charge for "appraisals" are but descriptions or definitions of separate crimes. We think, in short, that the example falls far short of an exposition of the unconstitutionality of any part of the measure. To our minds it shows but a proper and natural instance of the operation of a law that was intended to have a highly beneficial effect. The statute, in its parts which are now under examination, has merely made a classification of usurers which is eminently proper upon just principles of constitutional law. It places in a first class those who charge excessive interest and in the second class those who make excessive charges for "appraisals" and kindred service. Of course, in the practical application of the law a variety of consequences may result. A money lender may so demean himself as to fall within the first class denounced by the legislature, or he may so far forget that obedience to the mandate of the law which is required of everyone as to fall into the second class. In either event he is guilty of a crime but in each instance he commits a different crime from that perpetrated in the other. Also, under the denouncements of the law, he may be guilty of both crimes in the conduct of a single transaction. To be more specific, if he charges more than 12 per cent interest he is a criminal of the first class, if he charges more than the prohibited percentage for an "appraisal" he is a criminal of the second class, if he

charges more than 12 per cent interest and in the same transaction exacts a percentage in excess of that allowed by the Usury Act for an appraisal he is a criminal of both classes. We can see nothing in such a range of possibilities to induce the slightest objection, upon constitutional grounds, to the action of the leglislature which permits it. These views seem to us to be sound, as placing an estimate upon the constitutional powers of the legislature, and to be based not only upon just but upon necessary principles. We regard charges for interest and charges for "appraisals" and the like as entirely separate and distinct affairs, each or either furnishing a separate field of legislative exploration and attention. We think no authorities have been cited to us which exactly reach the question here presented and we have found none. We think none is necessary. The propriety of the distinction drawn in the Usury Act, on this head, seems to us to be manifest.

Petitioner, however, cites other "examples" of the operation of the particular part of the statute now under examination, each of which, he says, demonstrates the unconstitutionality of the measure. It is enough to say that in our opinion they neither demonstrate nor permit such an outcome. The entire subject covered by petitioner's assault upon that part of the statute now under scrutiny has been discussed and no necessity exists for a particular examination of the other "examples" stated by him. The claim of unconstitutionality on the ground now urged is without merit.

[9] Petitioner also insists that he is unlawfully imprisoned for the reason that another portion of the latter part of section 3 is unconstitutional when read in connection with the remainder of the Usury Act. The portion referred to may be shortened, under the plan above adopted as to other parts of the enactment, to read thus: "Any person who shall ask any fee, bonus or commission for procuring [a] loan of money for a shorter period than six months when said loan is not secured by a mortgage or pledge upon real estate shall be guilty," etc. Under rules of law which are stated above the objection thus made is not open to petitioner. In the pangs which he suffers pursuant to his conviction upon a charge of exacting an excessive rate of in-

terest, he can have no concern with the question whether some other person may or may not be punished for charging an undue amount as a bonus or commission for procuring loans. The portion of the statute which he now assails denounces a crime totally different in its nature from that which he committed, and if that portion of the statute were held to be unconstitutional—and we by no means pass upon the question—we can see no reason for a fall of that part of the enactment under which petitioner was convicted. The claim of petitioner that the statute is obnoxious to the organic law because it discriminates against one who may exact a bonus or commission for procuring a loan for a shorter period than six months, there being no prohibition against such a charge when the loan is for a longer period than that named, can be raised legitimately only by one convicted upon a charge of having exacted a bonus or commission for procuring a loan for the shorter period. Under this phase of the Usury Act there can be no possible discrimination against petitioner. The same argument obtains as against other specific objections which petitioner makes to this branch of the statute.

It is insisted by petitioner that the Usury Act is unconstitutional because it provides that no more than 12 per cent interest shall be charged for a loan of "goods." It is said that this particular provision operates to deprive a lender of his property without due process of law. Without pausing to explore the substance of the contention it is enough to say that petitioner is in no position to make it. Such a question will properly arise when it shall be presented by some person charged with the particular offense denounced by the provision referred to.

While we have not mentioned specifically all points made by petitioner, we have answered the substance of every contention that is presented.

Writ discharged and petitioner remanded to custody.

Finlayson, P. J., and Craig, J., concurred.