[Civ. No. 28285.   Second Dist., Div. Four.   Nov. 18, 1964.]

EARL L. WHITE et al., Plaintiffs, Cross-defendants and Appellants, v. ALBERT I. SEITZMAN et al., Defendants, Cross-complainants and Appellants.

Powers, Himrod & Pepys and Walter R. Powers for Plaintiffs, Cross-defendants and Appellants.

Sheldon R. Caplow for Defendants, Cross-complainants and Appellants.

KINGSLEY, J.—This case involves an appeal by plaintiffs to recover treble damages for interest under the Usury Law of California, Statutes 1919, page lxxxiii, Deerings General Laws, 1954, Act 3757. Two promissory notes were involved, each secured by deeds of real property. The court found that the transactions relating to these notes and trust deeds were in fact loans of money from defendants to plaintiffs, and not sales of trust deeds as contended by defendants. The court further found that the transactions were usurious, which fact was known or should have been known to all parties involved. The trial court, however, gave judgment for the defendants on the basis of the legal maxim that "No one can take advantage of his own wrong." (Civ. Code, § 3517.) Plaintiffs were therefore denied both the recovery of interest paid and an award of penalties.

This case also involves a cross-appeal on written guaranties executed by the plaintiff Earl L. White for the benefit of the defendants, imposing primary liability on said plaintiff in the event of default on the two promissory notes. The trial court held that, by virtue of a foreclosure sale, defendants had received payment in full of all sums due them on the notes and that they should recover nothing under the guaranties.

The facts of the case, as found by the trial court, are substantially as follows: The three corporate plaintiffs, Zeeco, Inc., Vesto, Inc., and Landco, Inc., were agents and instrumentalities of plaintiff Earl L. White, and were used by him solely as vehicles to transact his business affairs. Defendants were aware of these relationships. The plaintiff Earl L. White had also created, operated and maintained, 55 various corporations and 26 trusts. Included in his operations was the

practice of using one bank account for all of his corporations. The only person who determined what particular organization would get any credit for moneys received was the plaintiff Earl L. White. In this way he was the sole person who determined what corporation, if any, owed any money to the other corporations.

The plaintiffs entered into two written escrow agreements with the defendant Albert Construction Co. at the Gary Escrow Service, Inc. The agreements, dated September 24 and September 4, 1959, provided that Albert Construction Co. deposit in escrow the two sums of $21,250 and $10,800 to be paid to plaintiff Zeeco, Inc., and plaintiff Earl L. White, respectively, for an assignment of notes in the principal amounts of $25,000 and $12,000. The notes were executed by the other corporate plaintiffs, Vesto, Inc., and Landco, Inc., respectively, in favor of the plaintiff payees—Zeeco, Inc., and White. The notes were made payable on or before October 1, 1960, bearing interest at the rate of 10 per cent per annum on the principal amount on the face of the note. The notes were secured by deeds of trust on real property. Plaintiff Earl L. White also signed guarantees imposing personal liability on himself in event of default on the notes.

The trial court found that the notes and deeds of trust were a sham and subterfuge for the purpose of borrowing money and that plaintiff Earl L. White and the corporate plaintiffs knew that the transactions, as evidenced by the notes and deeds of trust, and the agreements of the parties with respect thereto, were contrary to law, and if they did not know it, they were presumed to know it under the law. The transfer of the note and deed of trust at a 10 per cent discount, the note being payable within slightly more than one year, was the first consideration given for the note, and was therefore a loan at a rate of interest in excess of the legal maximum.

The court further held that the defendants knew, or should have known, that the transactions were loans at a usurious rate of interest and not purchases of notes and deeds of trust and that they entered into same in bad faith. The court found that defendants never asked to see the notes and deeds of trust they proposed to acquire and did not see said notes and deeds of trust until same were delivered to them through the escrows at the close of escrows.

Defendants caused the Gary Escrow Service, Inc., named trustee in the deeds of trust, to sell the property covered by the deeds of trust for the full amount of the note, plus ac-

crued interest thereon, plus trustee's fees and expenses. Defendants received the sums of $7,166.67 and $3,500 in excess of moneys actually advanced to plaintiffs on the two notes.

However, the court found that, prior to the execution of the notes and deeds of trust and the assignments thereof, plaintiff Earl L. White and the corporate plaintiffs had made efforts to secure money from financial institutions on the real properties involved in this action, and other property, and in all instances were denied money. Plaintiff Earl L. White needed funds and the only way he could secure them was by creating deeds of trust, for which no consideration was given, for the purpose of borrowing money thereon.

Plaintiffs had been engaged in similar transactions over a period of 15 years. During this span of time they had handled a thousand or more trust deeds through their offices and plaintiff Earl L. White directed the terms and conditions of the trust deeds. The greater portion, if not all, of the trust deeds were transferred and sold at 10 per cent discount with 10 per cent interest. A number of the trust deeds carried the personal guarantee of Earl L. White. As a result of these transactions plaintiffs realized in excess of one million dollars.

I

Defendants contend that the purported assignment of the notes and trust deeds were bona fide sales and not loans of money. However, the trial court made specific findings that "The notes and trust deeds which are the subject of the first and second causes of action are a sham and subterfuge for the purpose of borrowing money," and "The transactions sued on in both causes of action were loans of money and not sales of notes and deeds of trust."

█ The rule is fundamental that "If there is any substantial evidence or any reasonable inference from the evidence to support the findings, the appellate court cannot substitute its judgment for that of the trial court." (*Janisse* v. *Winston Investment Co.* (1957) 154 Cal.App.2d 580, 582 [317 P.2d 48, 67 A.L.R.2d 225]; cf. *Brocke* v. *Naseath* (1955) 134 Cal. App.2d 23 [285 P.2d 291, 51 A.L.R.2d 1083]; *Murphy* v. *Ablow* (1954) 123 Cal.App.2d 853 [268 P.2d 80].)

█ Here the trial court refused to believe that a $25,000 trust deed note would be sold by the holder thereof two weeks after date of issuance for $21,250 at a loss of $3,700. It also refused to believe that sales were involved when the trust deeds to be sold had not been recorded when the transactions were entered into but were in fact recorded on or after the

dates the escrows for their "sales" were opened. Thus, the findings of the trial court are supported by substantial evidence.

Again, defendants question the findings of the trial court that the transactions were usurious. In order to find usury, the interest at 10 per cent had to be computed on the face value of the notes and not the reduced value. There was substantial evidence showing that the Gary Escrow Service, trustees under the deeds of trust, so computed the interest. Furthermore, it was stipulated by the parties, and the trial court expressly found, that respondents instituted foreclosure proceedings with respect to both trust deeds and in both instances the properties were sold by the trustee for the full amount of the principal of the notes plus accrued interest, plus advances made by respondents on prior encumbrances, and trustee's fees and foreclosure costs. Defendants have not shown sufficient cause for overturning these findings.

## II

The instant case requires us to resolve a conflict between the policy inherent in the Usury Act which, by subjecting an usurious lender to a penalty of treble the amount of interest collected, is designed to discourage such lenders, and the policy set forth in section 3517 of the Civil Code: "No one can take advantage of his own wrong." The plaintiffs contend that the former policy is controlling and that they should be granted the full penalty provided for in the Usury Act; defendants, of course, rely on the maxim of jurisprudence, above quoted.

In answering the plaintiffs' contention, the trial court found that plaintiffs not only knowingly initiated and consented to the usurious transaction but that plaintiff White had been the guiding hand in the transactions and had originated the scheme or device to evade the Usury Law. Thus to reward him with treble damages by invoking the provisions of the very law which he sought so furtively to evade would make a mockery of the law. It was designed to penalize sharp operators taking advantage of unwary and necessitous borrowers. The law was not designed to promote deliberate fraud on itself. The trial court held that such a recovery by plaintiffs would be contrary to the public policy of this state.

We conclude that, insofar as recovery of treble damages is concerned, the trial court correctly gave priority to the maxim that no man should profit by his own wrong. How-

ever, we think that, for reasons set forth below, plaintiffs should not be barred from the common law right to recover the unlawful interest paid and that such a recovery will serve to provide at least some reasonable restraint on usurious lenders even where they deal with sophisticated and designing borrowers.

Plaintiffs cite a number of cases to support their contention that the borrower and lender in a usurious loan are not *in pari delicto* and that the borrower, therefore, should be able to recover not only the interest paid to the lender but the penalty of treble damages as well. In none of these cases do the judgments rest on the same facts as are present in the case on appeal.

Plaintiffs rely on *Janisse* v. *Winston Investment Co., supra* (1957) 154 Cal.App.2d 580. In that case, the defendants dictated the form of the transaction to make it appear that they were assignees of an existing note and mortgage rather than lenders of money in order to evade the provisions of the usury law. This was accomplished by interposing a dummy payee between lender and borrower so that the lender would take an assignment of a note at a discount from the payee instead of making an outright usurious loan to the borrower. The court held that the borrower and lender were not *in pari delicto* and that estoppel does not arise simply because the borrower knew of the usurious nature of the transaction, took the initiative in seeking the loan and paid usurious interest without protest. However, in the present case the borrower, Earl L. White, went one important step further. He devised the means whereby the fraud on the statute was accomplished. Furthermore, White was not the innocent, unwary borrower of the *Janisse* case but rather he had been engaged in the business of operating a ''trust deed factory'' for some time and for great profit by means of transactions quite similar to the one now presented on appeal.

Likewise in the cases of *Stock* v. *Meek* (1950) 35 Cal.2d 809 [221 P.2d 15], *Simmons* v. *Patrick* (1962) 211 Cal.App.2d 383 [27 Cal.Rptr. 347], and *Paillet* v. *Vroman* (1942) 52 Cal.App.2d 297 [126 P.2d 419], cited by plaintiffs, the borrowers were not guilty of fraud in the formation of the contracts nor did they devise schemes whereby attempts were made to evade the usury law. Indeed, *Stock* v. *Meek, supra,* actually distinguishes its facts from those of *Ryan* v. *Motor Credit Co.* (1942) 132 N.J.Eq. 398 [28 A.2d 181, 142 A.L.R.

640], discussed later in this opinion, which is more clearly in point with the case on appeal.

Plaintiffs cite *Martin* v. *Ajax Constr. Co.* (1954) 124 Cal. App.2d 425 [269 P.2d 132]. That case also is distinguishable. It is sufficient to say that, in that case, the appellants expressly waived their appeal from that part of the judgment in the trial court denying them relief in their action for treble damages. In fact, the trial court had rejected the claim. Thus the question before this court was not presented on appeal in the *Martin* case. The court in that case was called upon to decide whether a lender could collect usurious interest when the borrower had participated in the formation of the contract. The court denied recovery. Any language cited from that case by plaintiffs should be directed to that issue and not to the issue presently before this court.

In *Williams* v. *Reed* (1957) 48 Cal.2d 57 [307 P.2d 353], the question presented before the court again was whether a lender could collect usurious interest when the borrower had initiated the transaction. Language in that case cited by plaintiffs is misdirected if plaintiffs use it as authority for recovering the penalties of treble damages. ▮ A borrower who defends against the enforcement of a usurious contract will more readily have the ear of the court than one who seeks to be rewarded in excess of any interest he paid and despite his own complicity in the formation of the illegal contract.

More directly in point is *Ryan* v. *Motor Credit Co., Inc., supra* (1942) 132 N.J.Eq. 398 [28 A.2d 181]. In that case, the complainant had borrowed $75,000 on nearly 500 automobiles on which he gave chattel mortgages. The complainant obtained these loans in the names of fictitious persons in order to split up the loans into sums of $300 or less in order to avoid the provisions of the New Jersey Small Loan Law which limited the amount any one individual could owe a small loan company to $300 at $2\frac{1}{2}\%$ per month interest. The complainant borrower then brought suit that defendants be decreed to account and return to complainant all sums which had been paid to them as interest or principal. The Court of Errors and Appeals affirmed the order of the Vice Chancellor dismissing the bill on the grounds that the complainant conspired to perpetrate a fraud on the law even though defendants had knowledge of and approved the illegal acts. The Court of Error and Appeals, quoting the opinion of the Vice Chancellor, held:

"If it be said that Ryan [the complainant] is not seeking

reward for his perfidy but only the enforcement of a substantive right given him by the statute, . . .[citations], the answer is that he has forfeited that right by his deliberate fraud, and the act was not designed to encourage fraud. *Had the legislature intended to prevent the court from making any inquiry as to the relative guilt of the parties to transactions such as are here involved, it could have said so in plain language* as has been done by the legislature in other jurisdictions. See Kansas Laws, 1860, Ch. 75, par. 3 referred to in *Marshall* v. *Beeler, supra* [104 Kan. 32 (178 P. 245).]'' (Italics added.)

In California, rather than prohibiting the courts from weighing the relative guilt of the parties, the Legislature has demanded such an inquiry by the provisions of section 3517 of the Civil Code, *supra,* ''No one can take advantage of his own wrong.''

It is noteworthy to point out that, in the *Ryan* case, the court sought to penalize both the collusive borrower and the usurious lender. The lender in that case was denied recovery of the balance of the unpaid principal sued for in his counterclaim. This court believes that in the present case also both parties should suffer some detriment. The plaintiffs should be denied their claim for punitive damages but the defendants should be required to refund the usurious interest paid by the plaintiffs.

Even though the full rigor of the usury law is not brought to bear against defendants by exacting treble damages from them, plaintiffs still have recourse to the common law remedy requiring a refund of any usurious interest paid. ''The penalty of treble interest specified in the act has been held in this state to be cumulative, and not to abrogate the common-law remedy to recover money paid under illegal provisions of a contract.'' *Taylor* v. *Budd* (1933) 217 Cal. 262 at p. 266 [18 P.2d 333]. To deny the recovery of usurious interest paid simply because treble damages are not allowed as a punitive measure would shift the penalty for a usurious contract onto the borrower instead of the lender which is patently contrary to the law of this state.

In *Martin* v. *Ajax Constr. Co., supra* (1954) 124 Cal.App.2d 425, the court allowed the borrower to set up the defense of usury against an action on a promissory note even though the borrower solicited the money and prepared the contract for its repayment at a usurious rate of interest. However, as has been pointed out, the borrower was not awarded treble

damages. ■ Thus the reasonable rule which should be inferred from this case is: whatever usurious interest the lender will not be allowed to take by direct court action, he should not be allowed to keep once an action is brought against him.

### III

The complete answer to defendants' cross-appeal, wherein they seek recovery against plaintiff and cross-respondent, Earl L. White, on his guarantee of the two trust deed notes involved in this suit, is the fact that the debts evidenced by said notes have been paid, satisfied and discharged. ■ A mortgage debt is fully extinguished by foreclosure and sale for the full amount. (*Reynolds* v. *London etc. Ins. Co.* (1900) 128 Cal. 16 [60 P. 467, 79 Am.St.Rep. 17].)

■ The two trust deeds had been foreclosed and the properties securing them were sold for the full amount of the principal, interest, advances, foreclosure costs and fees. This sale extinguished the debt and there was nothing remaining on which the guarantee could operate. The case here is, thus, distinguished from those in which foreclosure brought less than the amount of the note, leaving an unreimbursed balance which the guarantor could be required to pay.

■ Defendants point to the fact that the trust deeds were junior encumbrances and that they were required to pay off the senior liens. However, plaintiff White had guaranteed only the payment of the note which defendants purchased; he had not guaranteed that the senior liens would be paid, or that defendants' security would be any better than the junior lien for which they bargained. ■ The result of the foreclosure was to give defendants all that plaintiff White had guaranteed to them; they are not entitled to a double recovery.

The judgment is reversed with directions to enter judgment for plaintiffs in the amount of actual interest paid by them; otherwise the judgment is affirmed.

Burke, P. J., and Jefferson, J., concurred.

The petition of plaintiffs, cross-defendants and appellants for a hearing by the Supreme Court was denied January 13, 1965. Burke, J., did not participate therein.