Filed 12/14/15 Century Community Lending Co. v. Saleh CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CENTURY COMMUNITY LENDING COMPANY, LLC, | B255576 |
| Cross-complainant and Appellant, | (Los Angeles County Super. Ct. No. EC051593) |
| v. | |
| JACKIE SALEH, | |
| Cross-defendant and Respondent. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Laura A. Matz, Judge. Judgment and order affirmed.

Bergman Dacy Goldsmith, Gregory M. Bergman, Richard A. Fond and Mark W. Waterman for Cross-complainant and Appellant.

Alexander & Yong, Jeffrey S. Yong and John J. Aumer for Cross-defendant and Respondent.

_____

## INTRODUCTION

A lender forecloses on real property and makes a full credit bid at the nonjudicial foreclosure sale. The lender subsequently sells the property to a third party at a lower price, and sues the guarantor for the difference. The guarantor files a motion for summary judgment arguing that the lender's full credit bid extinguished the debt and precludes the lender from proceeding against the guarantor. The trial court grants the motion, and the guarantor subsequently recovers her attorneys' fees pursuant to an attorneys' fees provision in the guaranty. The lender appeals, arguing that the trial court misapplied the full credit bid rule and that the guarantor cannot recover attorneys' fees without submitting or disclosing the terms of her contingency fee agreement with her attorney. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *The Loan*

Jackie Saleh (Saleh) and her husband Salah Saleh (Salah) owned property in North Hollywood.[1] The Salehs decided to build a 10-unit apartment building on the property and formed Samax Development, LLC (Samax) to be the developer for the project. On February 11, 2009 the Salehs executed and recorded a grant deed transferring their interests in the property to Samax.

On April 8, 2009 Samax executed a construction loan agreement with Century Community Lending Company (CCLC), in which CCLC agreed to lend Samax $1,782,500 to finance the apartment project. Although Saleh was not a member of

---

[1]      The details of the dispute among the parties appear in our opinion in the prior appeal in this matter (*Century Community Lending Co. v. Saleh* (July 24, 2013, B240487) [nonpub. opn.] 2013 WL 3834333 (*Saleh I*).)

2

Samax, she along with Salah signed the loan agreement, the promissory note, and the deed of trust.[2]

The Salehs also personally guaranteed the construction loan. The guaranty stated: "Guarantor hereby absolutely, unconditionally and irrevocably guarantees to [CCLC] the full and prompt payment when due, . . . of all of the following: [¶] (a) The entire Indebtedness. [¶¶] (c) All costs and expenses, including reasonable fees and out of pocket expenses of attorneys and expert witnesses, incurred by Lender in enforcing its rights under this Guaranty."

On October 27, 2009 CCLC declared the loan in default and recorded a notice of default. On February 19, 2010 CCLC foreclosed on the deed of trust by a nonjudicial foreclosure sale, at which CCLC purchased the property with a full credit bid. The trustee's deed upon sale stated that the "Grantee herein was the foreclosing Beneficiary," the "amount of the unpaid debt together with costs was $535,174.54," and the "amount paid by the Grantee at the Trustee's Sale was $535,174.54." CCLC subsequently sold the property to a third party buyer for less than its full credit bid.

B.      *The Motions for Summary Judgment and for Attorneys' Fees*

The litigation began on November 24, 2009, when the general contractor for the apartment project sued Samax, Salah, CCLC, and the Century Housing Corporation for breach of contract and other claims. (*Saleh I*, at p. 1.) On July 29, 2010, after CCLC had foreclosed on the property, CCLC filed a cross-complaint for breach of contract against the Salehs seeking to enforce the guaranty. (*Saleh I*, at p. 2.)

---

[2]      Salah is not a party to this appeal.

Saleh ultimately[3] moved for summary judgment on CCLC's cross-complaint arguing that, as a matter of law, she had no liability under the guaranty because CCLC paid the debt in full when it purchased the property at a nonjudicial foreclosure sale with a full credit bid, and therefore there was no longer any debt for her to guaranty. In opposition to the motion, CCLC argued that its sale to a third party buyer for less than the Salehs' outstanding debt resulted in a deficiency that Saleh was obligated to pay under the guaranty. CCLC further contended that, by agreeing to the terms of the guaranty, Saleh had waived her right to argue she was not responsible for such a deficiency. The trial court granted the motion, ruling that CCLC's full credit bid extinguished the debt, leaving no deficiency for CCLC to recover under the guaranty. The trial court ruled that Saleh was entitled to judgment as a matter of law because CCLC had not suffered any damages as a result of Saleh's alleged breach of the guaranty.

Saleh filed a motion for attorneys' fees pursuant to the attorneys' fees provision of the guaranty and Civil Code section 1717. Saleh argued that she was entitled to recover her attorneys' fees because she was the prevailing party. CCLC argued in response that Saleh could only recover her attorneys' fees if she actually incurred them, which could only occur if the contingency in the contingency fee agreement with her attorney had been satisfied. CCLC contended that Saleh had not provided sufficient evidence that the contingency had in fact been satisfied. The trial court granted Saleh's motion and awarded her $61,907.50 in fees. CCLC appealed.

---

[3]     The trial court initially granted CCLC's request for a default judgment against the Salehs, and then denied Saleh's motion to set aside the default judgment. In *Saleh I* we reversed the trial court's order denying the motion to set aside the default judgment against Saleh. (*Saleh I*, *supra*, B240487.)

4

## DISCUSSION

A.     *The Trial Court Properly Granted Saleh's Motion for Summary Judgment*

Summary judgment is appropriate where there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.) Here, there are no disputed factual issues. There is only a legal dispute about the effect of CCLC's full credit bid at the foreclosure sale on CCLC's ability to enforce the guaranty against Saleh. We review the trial court's ruling on this legal issue de novo. (See *Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813; *Rhea v. General Atomics* (2014) 227 Cal.App.4th 1560, 1566; *Munoz v. MacMillan* (2011) 195 Cal.App.4th 648, 653.)

CCLC purchased the property at a nonjudicial foreclosure sale by bidding the full credit value of the outstanding indebtedness on the note, plus accrued interest and fees. The "full credit bid rule" provides that any such bid "releas[es] the borrower from further obligations under the defaulted note." (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1238 (*Alliance Mortgage*); see Civ. Code § 2910 ["[t]he sale of any property on which there is a lien, in satisfaction of the claim secured thereby, or in case of personal property, its wrongful conversion by the person holding the lien, extinguishes the lien thereon"].) After a full credit bid there is no difference between the amount owed on the note and the amount the lender received in foreclosure; the amount bid is the total indebtedness on the note. Thus, a sale for the full amount of the principal, interest, and fees at a nonjudicial foreclosure extinguishes the debt and nothing remains on which a guaranty can operate. (*White v. Seitzman* (1964) 230 Cal.App.2d 756, 765; see *Passanisi v. Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1503 (*Passanisi*) ["[i]f the creditor-beneficiary makes a 'full credit bid' for the property and is the successful bidder, then the proceeds from the trustee's sale are exactly sufficient to satisfy the debt [fn. omitted]," and "[i]n that case, there is no deficiency and no surplus"].) In the absence of any amount due on the note, there is no remaining balance to which Saleh's guaranty can apply.

The full credit bid rule also precludes a lender from later claiming that the property was actually worth less than the bid, as CCLC argues it was entitled to do because it sold the property to a third party for less than the amount of the full credit bid. (*Alliance Mortgage*, *supra*, 10 Cal.4th at pp. 1238, 1247; see *Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 606-607 (*Cornelison* ) [full credit bid precludes lender from subsequently recovering on an action for waste because "a nonjudicial foreclosure sale, if regularly held, finally fixes the value of the property therein sold"]; *Passanisi*, *supra*, 190 Cal.App.3d at pp. 1503-1504 ["'the full credit bid establishes the value of the property and the amount of the debt, the debt is fully satisfied, the lien is extinguished, and the beneficiary cannot pursue any other remedy *regardless of the actual value of the property on the date of the sale*'"].) Therefore, the full credit bid rule precludes CCLC from arguing that its sale to a third party for less than the amount of its full credit bid at the foreclosure sale created a deficiency that would allow CCLC to look to a guarantor to make CCLC whole. (See 5 Miller & Starr, Cal. Real Estate (4th ed. 2015) § 13:265, pp. 1132-1145; 4 Witkin, Summary of Cal. Law (10th ed. 2010) Security Transactions in Real Property, § 175, pp. 976-978.)

Of course, CCLC did not have to make a full credit bid. CCLC could have bid less than the full amount of the debt at the foreclosure sale and then sought to recover the difference from the guarantors. As the court in *Cornelison* explained, "the mortgagee is not required to open the bidding with a full credit bid, but may bid whatever amount he thinks the property worth. Indeed 'many creditors continually enter low credit bids . . . to provide access to additional security or additional funds.' [Citation.] It has been said that this is what the creditor should do." (*Cornelison*, *supra*, 15 Cal.3d at p. 607.) Similarly, the court in *Pacific Inland Bank v. Ainsworth* (1995) 41 Cal.App.4th 277 noted: "Like any other purchaser, a lender has no obligation to bid any particular amount. It should assess the property's value at the time of the trustee's sale and bid accordingly. [Citations.] Any subsequent decrease in the property is deemed the result of the purchaser's bad business judgment or a severe market downturn." (*Id.* at p. 281.) And had CCLC bid less than the full amount of the debt, it may have had a claim against

Saleh for the resulting deficiency because the guaranty Saleh signed appears to waive many of the protections California law affords to guarantors of notes secured by real property that is sold through a nonjudicial foreclosure. (See Civ. Code, § 2856 [enumerating rights and defenses waivable by guarantors].)[4] But CCLC cites no authority for the proposition that a lender, even a lender with an armada of valid waivers by a guarantor, can proceed against the guarantor after having extinguished the debt by making a full credit bid.

CCLC's attempts to distinguish the case on which the trial court relied, *White v. Seitzman*, *supra*, 230 Cal.App.2d 756 are unpersuasive. CCLC argues that *White v. Seitzman* did not involve a full credit bid from a lender, and that it predated Civil Code section 2856, *Union Bank v. Gradsky* (1968) 265 Cal.App.2d 40 (*Gradsky*), and what have come to be known as *Gradsky* waivers.[5] There is no legal distinction, however, between a cash payment from a third party and a full credit bid from a lender. As the court in *Passanisi* explained: "If the creditor-beneficiary chooses to bid for the property he is doing so in the capacity of a purchaser. The only distinction between the creditor-beneficiary and any other bidder is that the creditor-beneficiary is entitled to bid on credit up to the amount of the total obligation he is owed." (*Passanisi*, *supra*, 190 Cal.App.3d at p. 1503; see 5 Miller & Starr, Cal. Real Estate, *supra*, § 13:265, p. 1140 ["credit bid is

---

[4]  In *Saleh I*, we stated that Saleh might have a meritorious defense to CCLC's claim for breach of contract if she could show she was a principal obligor under the debt, not a true guarantor, and thus entitled to the benefits of California's anti-deficiency law. Because the trial court concluded that CCLC could not maintain a claim for breach of contract against Saleh, it did not address Saleh's defense to that claim.

[5]  Civil Code section 2856 "permit[s] a guarantor to waive certain legal and statutory defenses, as specified in the code which would otherwise be available" (*California Bank & Trust v. DelPonti* (2014) 232 Cal.App.4th 162, 167), including the one-action rule and anti-deficiency protections. *Gradsky* held that a lender is estopped from seeking to recover a deficiency against a guarantor after electing to proceed by a nonjudicial foreclosure sale, because this election destroys the guarantor's subrogation rights against the principal debtor. (*Gradsky*, *supra*, 265 Cal.App.2d at p. 41.) A "*Gradsky*" waiver is a provision in a guaranty waiving a defense based on the holding in *Gradsky*.

7

equivalent to a cash payment"].)  A lender is allowed to use credit at a foreclosure sale simply "to avoid the inefficiency of requiring the lender to tender cash which would only be immediately returned to it."  (*Alliance Mortgage*, *supra*, 10 Cal.4th at p. 1238*.*)  Moreover, neither Civil Code section 2856 nor the so-called "*Gradsky*" waivers that became commonplace in the wake of *Gradsky* undermine *White v. Seitzman*.  Civil Code section 2856 and *Gradsky* waivers address, among other things, a guarantor's liability for a deficiency between the amount of the debt guaranteed and the amount paid for the underlying security upon foreclosure.  They do not establish a right to recover from a guarantor where there is no deficiency.

CCLC's attempts to distinguish *Alliance Mortgage*, *Passanisi*, and *Cornelison* also fail.  Each of those cases examined the effect of the full credit rule on a lender's ability to pursue claims for damages arising out of the sale or other disposition of the property securing the original debt.  These cases stand for the proposition that, except where a lender can allege it was fraudulently induced into making the initial loan, the full credit bid rule extinguishes "the lender's only interest in the property, the repayment of its debt, has been satisfied, and any further payment would result in a double recovery." (*Alliance Mortgage*, *supra*, 10 Cal.4th at pp. 1238-1239, 1247-1248; see *Passanisi*, *supra*, 190 Cal.App.3d at p. 1503 [full credit bid leaves no deficiency]; *Cornelison*, *supra*, 15 Cal.3d at p. 606 [full credit bid extinguishes the lien on the real property].) These cases dictate the same result here, and that result makes sense.  If the full credit bid rule did not apply under these circumstances, lenders could foreclose on a property, make a full credit bid that could cut off other potential offers, and then hold the property indefinitely, waiting to see if the property appreciated or depreciated and using the guarantor as a hedge against the vagaries of the real estate market.  Under CCLC's theory, the guarantor could remain potentially liable for any eventual deficiency forever. (See *Najah v. Scottsdale Ins. Co.*, 230 Cal.App.4th 125, 138-139 [allowing lenders to use a full credit bid to obtain the property and later prove the property was worth less than the bid would encourage fraud and create uncertainty].)

8

Because there was no deficiency, CCLC suffered no damages as a result of any breach of Saleh's guaranty. Therefore, the trial court properly granted Saleh's motion for summary judgment. (See *Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, 1468 ["[d]amages are an essential element of a breach of contract claim"]; *Bramalea California, Inc. v. Reliable Interiors, Inc.* (2004) 119 Cal.App.4th 468, 473 [a breach of contract is not actionable without damage].)

      B.      *The Trial Court Did Not Err in Granting Saleh's Motion for Attorneys' Fees*

Where a contractual attorneys' fee clause is unilateral, giving only one party a right to recover attorneys' fees, Civil Code section 1717 "renders the provision mutual, giving either plaintiff or defendant, if a prevailing party, a right to attorney fees on any claims based on the contract." (*Scott Co. of California v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109.)[6] "[W]hen a defendant defeats recovery by the plaintiff on the only contract claim in the action, the defendant is the party prevailing on the contract under section 1717 as a matter of law." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876; see *Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 825 ["[w]hen a defendant completely defeats all breach of contract claims alleged against it, the defendant is the prevailing party under section 1717 as a matter of law"].) We review a trial court's award of attorneys' fees de novo where, as here, the appellant challenges the legal basis for an attorney fee award. (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213-1214.)

---

[6]     Civil Code section 1717, subdivision (a), provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

CCLC concedes that Saleh prevailed on its cause of action for breach of contract, that the guaranty contains a unilateral attorneys' fees provision in favor of CCLC (which section 1717 makes mutual), and that the amount of attorneys' fees the trial court awarded was reasonable. CCLC argues, however, that Saleh cannot recover attorneys' fees under Civil Code section 1717 without showing that she incurred the fees, and that whether she incurred fees depends on the terms of her contingency fee agreement, which she did not disclose.

CCLC's argument is contrary to California law. "'Modern jurisprudence does not require a litigant seeking an attorney fee award to have actually incurred the fees.'" (*Skistimas v. Old World Owners Assn.* (2005) 127 Cal.App.4th 948, 952.) "[T]he term 'incurred' [is] not synonymous with a personal obligation to pay the fees." (*Rickley v. Goodfriend* (2012) 207 Cal.App.4th 1528, 1534.) "California courts have routinely awarded fees to compensate for legal work performed on behalf of a party pursuant to an attorney-client relationship, although the party did not have a personal obligation to pay for such services out of his or her own assets." (*Lolley v. Campbell* (2002) 28 Cal.4th 367, 373.) "In practice, it has been generally agreed that a party may 'incur' attorney fees even if the party is not personally obligated to pay such fees. 'A party's entitlement to fees is not affected by the fact that the attorneys for whom fees are being claimed were funded by governmental or charitable sources or agreed to represent the party without charge.' [Citation.]" (*Ibid.*; see *Persson v. Smart Inventions, Inc.* (2005) 125 Cal.App.4th 1141, 1174 ["[n]umerous circumstances exist in which attorney fees are awarded even though not 'actually incurred,'" such as recovery of fees for in-house and pro bono counsel].) The reasonable hourly rate standard generally applies to determine the amount of an attorneys' fees award even when the attorneys are retained on a contingent fee basis. (See *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 701 ["""[t]he reasonable market value of the attorney's services is the measure of a reasonable hourly rate,""" and """[t]his standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below-market or

10

discounted rates, represent the client on a straight contingent fee basis, or are in-house counsel"""].)[7]

CCLC cites *Trope v. Katz* (1995) 11 Cal.4th 274 for the proposition that a party only "incurs" attorneys' fees if that party is liable to pay them. As the court noted in *Persson v. Smart Inventions, Inc.*, *supra*, 125 Cal.App.4th 1141, however, although the Supreme Court observed in *Trope* that "'the usual and ordinary meaning of the words "attorney's fees," both in legal and in general usage, is the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation,'" this statement "'was not intended to imply that fees can be recovered only when, and to the extent that, a litigant incurs fees on a fee-for-service basis.'" (*Persson v. Smart Inventions*, *supra*, 125 Cal.App.4th at p. 1173, fn. 22.) The *Persson* court explained that the Supreme Court in *Trope* held only that an attorney who represents himself or herself cannot recover attorneys' fees under Civil Code section 1717. (*Persson v. Smart Inventions*, *supra*, 125 Cal.App.4th at p. 1173, fn. 22.) This case does not involve attorney self-representation.

CCLC also cites *Franklin-McKinley School District of Santa Clara County v. Lester* (1963) 223 Cal.App.2d 347, where the court denied an award of attorneys' fees to a defendant after the plaintiff abandoned its claim. The court reasoned that the defendant's contingency fee agreement did not provide for the payment of a fee in the event of abandonment. (*Id.* at p. 348.) Here, Civil Code section 1717 authorized an award of fees based on the attorneys' fees provision of the guaranty. Saleh did not need to prove that she was also entitled to attorneys' fees under the contingency fee agreement with her attorney, and thus did not need to not disclose the terms of that agreement. To hold her to a different evidentiary standard than the one that would apply to CCLC had it

---

[7]     Moreover, as in *Persson*, nothing in the language of the attorneys' fees provision of the guaranty suggests "that the parties intended this provision would not apply in the event the prevailing party had a contingency fee agreement . . . ." (*Persson v. Smart Inventions, Inc.*, *supra*, 125 Cal.App.4th at p. 1176.)

11

been the prevailing party would thwart the policy underlying Civil Code section 1717, which is "to establish uniform treatment of fee recoveries in actions on contracts containing attorney fee provisions." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 616; see *Persson v. Smart Inventions, Inc.*, *supra*, 125 Cal.App.4th at p. 1176 ["'disparity of treatment is to be avoided in interpreting and applying attorney fees provisions'"].)

## DISPOSITION

The judgment and order granting Saleh's motion for attorneys' fees are affirmed. CCLC's motion for a stay is denied. Saleh is to recover her costs on appeal from CCLC.

SEGAL, J.

We concur:

PERLUSS, P. J.

ZELON, J.

12